ALEXANDER BELFORD

*v.*

MELINDE WOODWARD.

*Filed at Ottawa October 11, 1895.*

1. VARIANCE—*gold coin provision in judgment no variance.* A judgment for a specified sum in dollars, containing a provision for payment thereof "in United States gold coin," is admissible in evidence under a declaration describing it as for the sum of money in dollars only, the provision as to coin payment being treated as surplusage.

2. CONTRACTS—*for payment in gold coin enforcible.* A contract expressly made payable in gold coin is enforcible as made, and can not, at the option of the debtor, be paid in any other legal tender currency. *Reinback* v. *Crabtree*, 77 Ill. 182, criticised *in arguendo.*

3. JUDGMENTS—*when provision in judgment for payment in coin is invalid.* A default judgment, ordering payment of the amount adjudged in gold coin, is void as to such provision, where the complaint alleged no promise to pay in coin. But this does not make the judgment invalid as a whole.

4. SAME—*may be invalid in part and good in part.* A judgment of another State adjudicating a matter not presented by the pleading or within the issue may be held invalid as to such adjudication, but valid as to other matters which the judgment record shows are separable and within the issue.

5. ACTION—*debt lies on judgment payable in gold coin.* A judgment payable in United States gold coin, naming a specific sum in dollars, is not an unliquidated demand to be determined by the fluctuations of the gold market, and an action of debt will lie upon the same.

6. APPEALS AND ERRORS—*when variance is not reversible error.* The admission in evidence of a judgment payable in coin, under a declaration in debt for a sum of money only, even though a variance, would not be cause for reversal where the judgment rendered in the action is not for coin, but for a sum of money only.

7. SAME—*when Appellate Court's judgment will be corrected on appeal.* Any clerical mistake in the amount for which a judgment is entered in the Appellate Court may be corrected in the Supreme Court, where there is sufficient in the record and on the face of the judgment itself to show the correct amount.

*Belford* v. *Woodward*, 55 Ill. App. 307, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

This is an action of debt begun on June 6, 1893, by defendant in error against plaintiff in error upon a foreign judgment rendered on April 29, 1893, in favor of defendant in error and against plaintiff in error in the Superior Court of the city and county of San Francisco, California, for $3903.46 with interest thereon at the rate of seven per cent per annum debt, and $13.50 costs. A number of pleas were filed to the declaration, to-wit: (1) *Nul tiel record;* (2) *nil debet;* (3) that there was no such court as the one set forth in the declaration; (4) that the Superior Court of San Francisco had no jurisdiction to render the judgment; (5) that the defendant was never served, etc. Replications were filed to the pleas and rejoinder to the replications. The cause was tried before a jury, who returned a verdict finding "the issues in debt in favor of the plaintiff and against the defendant for the sum of thirty-nine hundred and sixteen and $\frac{96}{100}$ dollars ($3916.96) and damages in the sum of two hundred and eighty ($280.00) dollars." After overruling motions for new trial and in arrest of judgment, the court below rendered judgment upon the verdict "that the said Melinde Woodward do have and recover of and from the said Alexander Belford the sum of three thousand nine hun-

dred and sixteen dollars and ninety-six cents ($3916.96), her debt aforesaid, and two hundred and eighty dollars ($280), her damages aforesaid, and also her costs to be taxed by the clerk of this court, and that said Melinde Woodward have execution against the said Alexander Belford for her said debt, damages and costs." This judgment has been affirmed by the Appellate Court, and is brought here for review by writ of error.

The judgment roll from the California court, introduced in evidence, showed service upon Belford; that he appeared and filed a demurrer to the complaint; that the demurrer was overruled; that he filed no answer, and that default was entered against him. The judgment roll also sets forth in full the complaint which describes the cause of action. The liability charged in the complaint against Belford was that of endorser upon two notes executed by one Cogan to the plaintiff, Woodward. The complaint avers, that Cogan made one of these notes, "whereby he agreed and promised to pay to plaintiff the sum of $1443.75 in eight months from date," and the other of said notes "whereby he agreed and promised to pay to plaintiff the sum of $1512.50 in fourteen months from date." The complaint prays for "judgment for the sum of $2956.25 together with interest thereon from the time the said promissory notes matured and for costs of suit." The judgment rendered by the Superior Court of San Francisco, as the same is set out in the judgment roll, concludes as follows: "It is hereby ordered, adjudged and decreed that the plaintiff, M. Woodward, in the above entitled cause, do have and recover of and from the defendant, Alexander Belford, in said cause, the sum of $3903.46, with interest thereon at the rate of seven per cent per annum from date hereof until paid, together with plaintiff's costs and disbursements incurred in said action, amounting to the sum of $13.50, and that said sum of $3916.96 and said interest be paid in United States gold coin."

NEWMAN & NORTHRUP, for plaintiff in error:

There was a material variance between the judgment shown in the record offered in evidence and the judgment set out in the declaration. *Bronson* v. *Rodes,* 7 Wall. 240; *Dewing* v. *Sears,* 11 id. 379; *Butler* v. *Horwitz,* 7 id. 258; *Gregory* v. *Morris,* 96 U. S. 626; *McGoon* v. *Shirk,* 54 Ill. 408; *Myers* v. *Kauffman,* 95 Am. Dec. 367; *Dutton* v. *Pailaret,* 91 id. 135.

It is fundamental that an action of debt will not lie on any obligation except one for the payment of "money," pure and simple, without any additional and qualifying provisions fixing the kind or character of money with which the debt is to be paid. *Mix* v. *Nettleton,* 29 Ill. 245.

The fact that bank notes are, at the time of judgment, above par, does not alter the case, as they are subject to rise and fall in value with the changes of time or place. *Wilson* v. *Hickson,* 1 Blackf. 230.

Debt will not lie upon a note payable in North Carolina "bank notes." It was averred in the declaration that North Carolina bank notes were of equal value with specie, but the court held that if such an averment helped the declaration, suit might be brought upon a note payable in horses or corn. *Deberry* v. *Darnell,* 5 Yerg. 451; *Scott* v. *Conover,* 1 Halst. 222; *Campbell* v. *Weister,* 1 Litt. 30; *Mattox* v. *Craig,* 2 Bibb, 584; *Brunner* v. *Kelsoe,* 1 id. 487; *Osborn* v. *Fulton,* 1 Blackf. 234; *Watson* v. *McNairy,* 1 Bibb, 359.

PRENTISS, MONTGOMERY & HALL, for defendant in error:

In *Humphrey* v. *Clement,* 44 Ill. 229, in chancery, for the specific performance of a contract for sale and conveyance of a tract of land, in which the purchase money was to be paid in gold, it was held that the contract was solvable in legal tender.

If a jury should assess the damages of plaintiff in gold coin, the court may disregard so much of the verdict as relates to gold coin, and enter a judgment which does not specify any particular kind of money. 1 Black on Judg-

ments, sec. 152; *Chamberlain* v. *Vance*, 51 Cal. 75; *Watson* v. *Railroad Co.* 50 id. 524.

A dollar is a dollar, whether payable in gold or national currency; and ten per cent interest payable in gold may be lawfully paid, dollar for dollar, in any currency which the general government has declared to be legal tender in the payment of debts. *Reinback* v. *Crabtree*, 77 Ill. 182; *Black* v. *Lusk*, 69 id. 70.

From the above it will be seen that the judgment upon which this action was based was declared on according to its legal effect, and therefore was properly admissible in evidence. *Archer* v. *Claflin*, 31 Ill. 306.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

When the judgment roll was introduced in evidence by the plaintiff below the defendant objected to it upon the alleged ground, that there was a variance between the judgment set forth in the declaration and the judgment described in the judgment roll so offered in evidence, in this, that the judgment set forth in the declaration was therein described as a judgment for a certain number of dollars, or for money simply, whereas, as it is insisted, the judgment described in the judgment roll was a judgment for a certain number of dollars to be paid or payable "in United States gold coin." This objection was overruled, and exception was taken.

Counsel for plaintiff in error contend, that a judgment, calling for a certain amount of dollars payable "in United States gold coin," is in no respect different from a judgment calling for a certain amount of gold bullion; that, without evidence showing the mercantile value of the quantity of gold coin called for, it was impossible for the court or jury to determine what in fact was the obligation fixed by the judgment in question, as gold coin is constantly fluctuating in value; and that, as the plaintiff offered no such evidence, she failed to make out a case

showing the amount of principal debt or interest, if any, due to her from the defendant.

The simple question involved in the objection is, whether there was such a variance between the declaration and the record of the California judgment, as required the trial court to exclude the latter when it was offered in evidence. The declaration alleges, that the plaintiff did, by the consideration and judgment of the Superior Court, etc., of San Francisco, recover against the defendant, in a certain action for the recovery of money, the sum of three thousand nine hundred and three dollars and forty-six cents ($3903.46) with interest, etc., for her debt, and also the costs taxed at thirteen dollars and fifty cents ($13.50). The judgment, shown by the offered roll, is a judgment ordering and adjudging, that plaintiff recover against the defendant the same number of dollars with interest for her debt, which are mentioned in the declaration, and the same number of dollars for costs which are mentioned in the declaration. So far, there is an exact correspondence between the allegation and the proof. Does the fact, that the judgment set out in the roll contains at the end of it the words: "and that said sum of $3916.96 and said interest be paid in United States gold coin," create a fatal variance? The declaration sets forth the recovery of a judgment for so many dollars; the judgment roll shows a judgment for the recovery of the same number of dollars. The only difference between the two is, that the latter directs that such number of dollars be paid in a specified kind of money. We are inclined to think, that there was no variance, and that the direction as to the payment "in United States gold coin" was mere surplusage.

Before the decision in *McGoon* v. *Shirk*, 54 Ill. 408, this court had held that, under the acts of Congress of February 25, 1862, and July 11, 1862, known as the "Legal Tender acts," a note or contract for the payment of a sum of money specifically in gold could be discharged by the

payment of the same sum in legal tender notes, and that, in a suit upon such a note or contract, judgment could be entered up for the amount due upon the face of the instrument, and that the value of gold over legal tender notes was not a subject for consideration in an action brought on such a note or contract. But these prior decisions were overruled in *McGoon* v. *Shirk, supra,* because, after their rendition, the Supreme Court of the United States decided the cases of *Bronson* v. *Rodes,* 7 Wall. 229, and *Butler* v. *Horwitz,* 7 id. 258, taking a contrary view; and the construction given by that court to an act of Congress was, of course, binding upon this court. Accordingly, the *Bronson* case and the *Butler* case were followed in the *McGoon* case. In the latter the question was, whether a note payable, in terms, in American gold, and executed after the passage of the Legal Tender act of February 25, 1862, could be discharged by a tender of United States treasury notes; and the *Bronson* case was there construed as holding, that an express contract to pay coined dollars could only be satisfied by the payment of coined dollars; and the *Butler* case was construed as holding that, when it appears to be the clear intent of a contract that payment or satisfaction shall be made in gold and silver, damages should be assessed and judgment rendered accordingly; and, after thus construing the two Federal decisions, we said in the *McGoon* case: "The note was payable in American gold; and in that medium alone, *without the consent of the payee,* could it be paid and satisfied. The court erred in holding the tender of treasury notes sufficient, and a compliance with the contract; and for this error the decree must be reversed."

In *Hepburn* v. *Griswold,* 8 Wall. 603, the Supreme Court of the United States held, that the Legal Tender acts of 1862 and 1863, making United States notes a legal tender in payment of all debts, public and private, was unconstitutional, so far as it applied to debts contracted before the passage of those acts; that, before February 25, 1862,

all contracts not expressly stipulating otherwise, were, in legal effect, contracts for the payment of coin, and that, under the constitution, the parties thereto were respectively entitled to demand and bound to pay the sums due, according to their terms, in coin, notwithstanding the provision in the Legal Tender acts making United States notes a legal tender in payment of such debts. Following the *Hepburn* case, this court held in *Morrow* v. *Rainey*, 58 Ill. 357, and *Chamblin* v. *Blair*, 58 id. 385, that contracts for the payment of money, made before the passage of the Legal Tender acts, had reference to coined money, "and could not be discharged, *unless by consent*, otherwise than by tender of the sum due in coin."

Subsequently, the *Legal Tender cases* (*Knox* v. *Lee* and *Parker* v. *Davis*, 12 Wall. 457,) overruled the case of *Hepburn* v. *Griswold*, *supra*, so far as it held the Legal Tender acts to be unconstitutional as applied to contracts made before the passage of those acts; and, by consequence, the decisions in 58 Ill., also so holding, were rendered nugatory as authorities upon that point. The *Legal Tender cases*, 12 Wall. 457, held, that the Legal Tender acts were constitutional as applied to contracts made before, as well as to contracts made after, the passage of those acts; but we do not understand, that the decision in the *Legal Tender cases* so called overruled the cases of *Bronson* v. *Rodes* and *Butler* v. *Horwitz*. The *Legal Tender cases* decided, that contracts payable in money, whether made before or after the passage of the Legal Tender acts, could be discharged by the tender of United States treasury notes, popularly known as "greenbacks;" but they did not decide, that contracts specifically payable in gold and silver coin could not be enforced as such. It was only contracts payable in money *generally*, without specifying gold and silver coin, which were therein referred to. The decision in those cases recognizes two kinds of money as legal tender in the payment of debts, first, gold and silver coin, second, treasury notes made legal tender

by act of Congress. It was therein held, that all debts, which the contract of the parties did not make payable in coin, could be discharged in legal tender notes, but the right to make and enforce contracts for payment in coin was not denied. Mr. Justice STRONG, who wrote the opinion in the *Legal Tender cases*, expressly says: "We speak now of contracts to pay money generally, not contracts to pay some specifically defined species of money."

The case of *Bronson* v. *Rodes, supra,* is recognized as authority in *Trebilcock* v. *Wilson,* 12 Wall. 687, decided a year after the *Legal Tender cases* were decided. In *Trebilcock* v. *Wilson,* the question arose, whether a note payable by its terms *in specie* could be satisfied, *against the will of the holder,* by the tender of notes of the United States declared by the act of February 25, 1862, to be a legal tender in payment of debts, and it was there held, that the use of the term, *in specie,* did not assimilate the note to a note payable in chattels, but that those words were descriptive of the kind of dollars in which the note was payable, "there being different kinds in circulation, recognized by law;" and, after stating the meaning of the words, "in specie," to be "that the designated number of dollars in the note shall be paid in so many gold or silver dollars of the coinage of the United States," the court says: "This being the meaning of the term, *in specie,* the case is brought directly within the decision of *Bronson* v. *Rodes,* where it was held that express contracts, payable in gold or silver dollars, could only be satisfied by the payment of coined dollars, and could not be discharged by notes of the United States declared to be a legal tender in the payment of debts. The several coinage acts of Congress make the gold and silver coins of the United States a legal tender in all payments according to their nominal or declared values. As the act of 1862 * * * has been sustained by the recent decision of this court, (12 Wall. 457), as valid and constitutional, we have, according to that decision, two kinds of money, essentially dif-

ferent in their nature, but equally lawful. It follows, from that decision, that contracts payable in either, or for the possession of either, must be equally lawful, and, if lawful, must be equally capable of enforcement. * * * We shall find little difficulty in holding, that it (the act of 1862) was not intended to interfere in any respect with existing or subsequent contracts payable by their express terms in specie; and that, when it declares that the notes of the United States shall be lawful money, and a legal tender for all debts, it means for all debts which are payable in money generally. * * * The twentieth section of the act of 1792 * * * has reference to the coins prescribed by the act, and where, by the creation of a paper currency, another kind of money, expressed by similar designations, was sanctioned by law and made a tender in payment of debts, it was necessary, as stated in *Bronson* v. *Rodes*, to avoid ambiguity and prevent a failure of justice, to allow judgments to be entered for the payment of coined dollars, when that kind of money was specifically designated in the contracts upon which suits were brought." Accordingly, in the *Trebilcock* case, the judgment of the Supreme Court of Iowa, holding that a tender of greenbacks, or United States legal tender notes, in payment of the note payable *in specie* was legal and sufficient, was reversed.

Still later, in *Gregory* v. *Morris*, 96 U. S. 619, the Supreme Court of the United States again recognized the case of *Bronson* v. *Rodes*, and refer to it as holding, that a contract for the payment of gold coin is "an agreement to deliver a certain weight of standard gold to be ascertained by a count of coins, each of which is certified to contain a definite proportion of that weight," and that judgment may be rendered upon such a contract payable in coined dollars; and it was held in the *Gregory* case, that an instruction, telling the jury that "no agreement or contract to pay a certain number of dollars in gold

can be enforced," was properly refused as being in conflict with *Bronson* v. *Rodes.*

Hence, any language used in *Reinback* v. *Crabtree,* 77 Ill. 182, which can be construed as holding that a contract payable in gold may be paid at the option of the debtor, and against the will of the creditor, in any currency which the general government has declared to be a legal tender in the payment of debts, must be regarded as being in conflict with the Federal decisions, and is not binding as authority. Such language was used inadvertently, and was in conflict with the case of *McGoon* v. *Shirk, supra,* which was evidently everlooked.

We conclude that "express contracts to pay coined dollars," where creditors insist upon their enforcement, "can be satisfied only by the tender of payment of coined dollars, and judgments in suits brought on such contracts may be entered for coined dollars and parts of coined dollars, such contracts not being within the legal tender acts." (15 Am. & Eng. Ency. of Law, p. 705, and cases in notes; 1 Freeman on Judgments,—4th ed.—sec. 3, and cases in notes).

But it is only where the contract calls for the payment of the debt in gold coin that the judgment should be rendered for coined dollars. In the case at bar, it appears, from a reference to the judgment roll of the California court, where the complaint in the action is set out in full, that the notes, upon which the suit was brought in the California court, are described as notes for the payment of so many dollars, and not as notes for the payment of so many dollars in "United States gold coin." The judgment, by the use of the words: "and that said sum of $3916.93 and said interest be paid in United States gold coin," goes beyond, and is not authorized by, the allegations of the complaint in regard to the terms of the note. The judgment is complete in itself without the added words as to the mode of payment; because it is therein adjudged, that plaintiff do have and recover of and from

the defendant the sum of $3903.46 with interest, etc., to-
gether with costs, etc., amounting to the sum of $13.50,
before the added words are reached.   Their omission
would detract nothing from the sufficiency of the judg-
ment.

In *Watson* v. *S. F. & H. B. R. R. Co.* 50 Cal. 523, the ver-
dict and judgment were for gold coin; there was no alle-
gation in the complaint warranting a recovery in gold
coin; the Code of Civil Procedure in California requires
the judgment to conform to the verdict; and the Supreme
Court of California there held, that, "if the verdict goes
beyond the issues raised by the pleadings, and passes
upon an extraneous fact not embraced therein, it is void
*pro tanto*, and the surplus matter may be disregarded in
entering the judgment."   The court in that case proceeds
to say:  "In this case there was no issue as to whether
plaintiff's demand was payable in gold coin, and the com-
plaint contains no averment on that point.   The words
'gold coin' in the verdict are, therefore, mere surplus-
age, and should have been disregarded in entering the
judgment."   To the same effect is *Chamberlin* v. *Vance*, 51
Cal. 75.

This ruling is applicable here, as the judgment sued
upon was rendered in California.   It is manifest, that the
judgment sued upon, being a judgment by default, went
beyond the issue raised by the complaint in ordering the
judgment to be paid in gold coin, and to that extent is
void.   The defendant below made this very objection to
the admission of the judgment roll.   The record shows,
that he objected to its admission upon the following
ground among others:   "That the said judgment roll
shows a void judgment in this, that the judgment therein
shown appears to have been rendered by default in an
action where the complaint of the plaintiff showed no
promise or undertaking of the defendant to pay any sum
in gold coin, but, notwithstanding this fact, judgment
was entered therein for a sum of money payable in gold

coin." We think, that the objection was valid as to that part of the judgment which directs payment to be made in gold coin, but not as to the whole judgment.

A judgment of a court of another State, adjudicating a matter not presented by the pleadings or within the issue, is void even in a collateral proceeding. (*Reynolds* v. *Stockton*, 43 N. J. Eq. 211). If the whole judgment is void when all the matters adjudicated by it are outside of the issue, then, when two matters adjudicated upon by a judgment are shown upon the face of the judgment record to be easily and naturally separable, and one of them to be within the jurisdiction of the court, and the other to be beyond its jurisdiction, the judgment may be held to be valid as to the former matter, and void as to the latter. In such case, the judgment will be sustained so far as it adjudges what the court has the power to adjudge as being within the issue, and will be void so far as it attempts to adjudicate upon what is beyond its power as being outside of the issue. This principle was applied in the late case of *People* v. *Seelye*, 146 Ill. 189, where the judgment of a probate court, approving the account of a guardian which appeared in the record to be a part of the judgment itself, was sustained in a collateral proceeding as to a part of the items of the account which the court had the power to pass upon, but was held to be void as to the items which were beyond the jurisdiction of the court.

The judgment sued upon in the present action being void only as to the last clause which directs the mode of payment, and being valid as to that portion of it which adjudges that the plaintiff should recover the sum of so many dollars generally, it follows that there was no such variance as is insisted upon, because the declaration correctly declares upon the valid portion of the judgment according to its legal effect.

It is difficult to see how the defendant below could have been injured by the action of the court in admitting

the judgment roll from California. In this action of debt upon the California judgment, the trial court rendered judgment against defendant for the sum of a certain number of dollars without any direction that it be paid in any particular kind of money. The defendant has not been required to pay the judgment in United States gold coin. The judgment against him being a judgment for the payment of dollars generally, he can discharge it in either one of the two lawful kinds of money, that is to say, either by paying gold and silver coin, or by paying legal tender notes. The plaintiff, by taking a judgment payable in dollars generally, has waived her right to insist upon payment "in United States gold coin."

Counsel for plaintiff in error claim, that a judgment is a contract. Some courts have held that a judgment is a contract, and others have held that it is not a contract. (1 Freeman on Judgments, sec. 4; 1 Black on Judgments, secs. 7-11). The doctrine of this court is, that a judgment is not a contract. (*Williams* v. *Waldo*, 3 Scam. 264; *Rae* v. *Hulvert*, 17 Ill. 572; 1 Black on Judgments, sec. 10, and notes). But, even if the judgment here sued upon, be a contract, we see no reason why the party seeking to enforce it may not waive the provision requiring payment to be made in gold coin, and give the debtor the privilege of paying in any kind of money which is legal tender under the acts of Congress. The authorities hold, that contracts payable in gold coin must be satisfied in that medium unless another mode of satisfaction meets with the consent of the creditor. With his consent they may be satisfied in legal tender notes. The prohibition against the satisfaction of a contract payable in gold coin by the payment of any other medium than gold coin only applies where the satisfaction in another medium than that of gold coin is against the will of the creditor. If the creditor does not choose to take a judgment payable in coined dollars, the debtor is not injured,

as then he may pay in either coined dollars or legal tender notes.

Counsel for plaintiff in error invoke the well settled rule, that debt will not lie on any obligation except one for the payment of a sum specifically certain, and insist that the clause as to payment in United States gold coin does not call for the payment of money or a sum certain, but for the payment of an unliquidated amount to be determined according to the fluctuations of the gold market. Even if the clause in question be regarded as a valid part of the judgment, we are unable to agree with counsel upon this point. We regard an obligation to pay "in United States gold coin" as an obligation to pay in money, or an agreement to deliver a certain weight of standard gold ascertainable by count of coins made legal tender by statute. A contract for the payment of so many dollars in gold and silver is a contract for the direct payment of money, and the judgment in a suit thereon should be entered for coined dollars and parts of dollars when such is the will of the creditor. (*Hart & Foster* v. *Flynn's Exr.* 8 Dana, (Ky.) 190; *Dewing* v. *Sears*, 11 Wall. 379). We do not regard the case of *Mix* v. *Nettleton*, 29 Ill. 245, where it was held that an action of debt would not lie upon a due bill for so many dollars payable in county orders, as having any application here.

It is claimed, that the judgment here is for too large an amount. The judgment in the circuit court was for $3916.96 debt and $280.00 damages or interest. In the Appellate Court the defendant in error remitted $6.00, and judgment there should have been entered for $3916.96 debt and $274.00 damages, but, as matter of fact, the clerk entered up judgment affirming the judgment of the circuit court for $3916.96 debt and $275.00 damages, the latter amount being too large by one dollar. There was here what was clearly a clerical mistake in putting the figures $275.00, instead of $274.00. As the judgment of the Appellate Court shows upon its face that the de-

fendant "remitted the sum of six dollars from the judgment entered in the lower court," and as the record of the lower court is before us showing that the judgment for damages there was $280.00, there is that in the record and upon the face of the judgment itself by which the latter can be amended, and the mistake of the clerk rectified. We are inclined to think, therefore, that we have the power to correct the judgment of the Appellate Court in the respect thus indicated. It is accordingly so ordered.

The judgment of the Appellate Court will be affirmed for $3916.96 debt and $274.00 damages, and the costs.

*Judgment affirmed.*